[No. 14120. Department One. October 15, 1917.]

G. L. FARNHAM, *Respondent*, v. AKRON TIRE COMPANY, *Appellant*, THOMAS JOYCE, *Defendant*.[1]

PRINCIPAL AND AGENT—EXISTENCE OF RELATION—EVIDENCE—SUFFICIENCY. Findings that one J., whose representatives sold defendant's automobile tires to the plaintiff, was the agent of the defendant and not an independent jobber, are sustained, where it appears that he was financially irresponsible, had desk room in the office of the defendant, the defendant shipped the tires direct to the plaintiff with draft for balance due, which was paid to and retained by the defendant without passing through the hands of J., and correspondence with the plaintiff was carried on upon the letter-heads of the defendant, signed by a "private secretary" without disclosing the name of J., who was unknown to the plaintiff.

SAME—PAYMENT TO AGENT—RECOVERY. In an action for damages sustained in the purchase of defective automobile tires, the plaintiff may recover money paid to the representative of the defendant's agent where the agent was authorized to collect it for the defendant.

SALES—DEFECTIVE GOODS—DAMAGES—EVIDENCE—SUFFICIENCY. In an action for damages sustained in the purchase of defective automobile tires, a recovery cannot be had upon evidence of the plaintiff that he must have spent over $500, or in that neighborhood, which

[1]Reported in 167 Pac. 1081.

he could not give definitely, for rent and in fitting up a storeroom and advertising matter, there being no evidence of the reasonable value thereof.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered November 15, 1916, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Modified.

*E. H. Belden,* for appellant.

*Glen V. Farnham* and *A. G. Starkey,* for respondent.

MAIN, J.—The purpose of this action was to recover damages claimed to have been sustained by the plaintiff by reason of the purchase from the defendant of a quantity of automobile tires. The cause was tried to the court without a jury, and resulted in a judgment in favor of the plaintiff in the sum of $3,834.56, from which the defendant appeals.

The facts are these: The appellant is a corporation organized under the laws of the state of New York, with offices at 1789 Broadway, in New York city. This corporation is engaged in the business of rebuilding and selling automobile tires. On February 29, 1916, appellant contracted with one E. P. Janes to sell him a certain number of automobile tires per month during the life of the contract, Janes to act as a jobber. On March 17, 1916, Janes contracted with one Thomas Joyce, a resident of Spokane, to act as jobber for the Akron tires in the state of Washington. On the 7th day of April, 1916, Joyce, by written contract, sold to the respondent a quantity of Akron tires and received at the time twenty-five per cent of the purchase price, or $750. The respondent did not know of the contract between the Akron Tire Company and Janes, nor of the contract between the latter and Joyce. He ordered the tires, as he thought, from the Akron Tire Company, the appellant. Joyce transmitted the order to Janes, or to the Akron Tire Company, and after it was received, the Akron Tire Company took from its shelves tires and shipped them direct to the respondent. The

bill of lading was sent by the tire company to the Exchange National Bank of Spokane with a draft in the sum of $2,250 attached. The respondent paid the draft and $315 freight, caused the tires to be removed to his storeroom from the car in which they were shipped, opened them and discovered that they were practically worthless. He refused to put them on sale and immediately took the matter up with Joyce, who communicated by wire and letter either with Janes or the tire company. Joyce caused the tires to be taken from the storeroom of the respondent and placed in the hands of a third party for sale, with instructions to sell them for the best price obtainable. When sold, the total lot, for which the respondent had paid $3,000, brought approximately $1,000 gross, and after deducting the cost of sale, netted $687.40. Before these tires were received, and on April 28, 1916, the respondent made another contract with Joyce, whereby he was to purchase $2,824.75 worth of Akron tires and pay to Joyce twenty-five per cent of this amount, or $706.19. After the respondent had refused the first lot of tires, the second order was either canceled, or, if in transit, the goods were recalled without an attempt to deliver them. The action was brought for the damage which the respondent claimed to have sustained by reason of the two transactions.

The controlling question in the case is whether Joyce was in fact the agent of the Akron Tire Company, or, to state it otherwise, whether Janes was a mere figurehead acting in the capacity of a broker for the purpose of shielding the tire company from claims for damages from customers to whom its worthless products had been sold. The trial court sustained the claim of agency and repudiated the thought that Janes was an independent jobber. It is admitted that Joyce was the agent of Janes. The officers of the Akron Tire Company, and also Janes, testified by depositions, and if effect is to be given their mere words, Janes was an independent jobber. As against these mere words are certain acts, some

of which will be noticed. Janes was financially irresponsible. He had desk room, or office room, in the offices of the Akron Tire Company with only a railing between the portion of the office used by him and that portion occupied by the tire company. The tires were shipped by the Akron Tire Company direct to Farnham, the respondent, and did not pass through the hands of Janes. No part of the $2,250, the amount of the draft, was paid to Janes. The entire amount was retained by the tire company. When Joyce made the sale, he collected twenty-five per cent, or $750. Under his contract with Janes, he was to, and did, retain twenty per cent of the $3,000, or $600. Five per cent, or $150, was remitted by him either to Janes or the Akron Tire Company.

On April 15, 1916, and before the tires had been received by the respondent, he addressed a letter to the Akron Tire Company at its offices in New York, making certain inquiries with reference to the Akron tires. This letter was received by one of the officers of the tire company and handed by him to Janes. On April 20, 1916, this letter was answered, and signed "L. M. Pellner, Priv. Sec'y." It is on the stationery of the Akron Tire Company, and does not disclose to whom Pellner is private secretary. On the upper left-hand corner of the envelope in which it was inclosed, above the cut of a building designated as that of the Akron Tire Company, appears this in typewriting: "Mr. E. P. J." At this time the respondent had no knowledge of Janes, and neither "Mr. E. P. J.," nor the signature to the letter, disclosed to him that it came from other than the Akron Tire Company. Janes testifies that he wrote the letter, and that it was signed by his private secretary, because on some days he had so much business and so much correspondence that he did not have time to sign letters personally. Yet he was doing this business, as one of the officers of the Akron Tire Company testified, in an office for which he was paying about $10 per month rent. There are other facts which might be recited as tending to show that Janes was a mere figurehead and not an independent jobber.

The trial court accurately characterized the arrangement be-
tween Janes and the company as

".    .    .    a cunningly devised scheme to put Mr. Janes up
as a figurehead to take the brunt of any shortcomings of the
company, and throw the blame onto him in case any trouble
arose."

The appellant's brief characterizes this conclusion of the
trial judge as a product of his imagination, but we think that
it is a reasonable inference to be drawn from the facts. The
finding that Janes was the agent, or a mere figurehead to pro-
tect the company from trouble, in our opinion, is amply sus-
tained by the evidence. The trial court disbelieved the oral
testimony of the officers of the company and of Janes, and in
this we think he was right.

The appellant contends that, in any event, it should not
be liable for two items of damages. One is the $706.19 that
was paid to Joyce on the second contract, but we think this
contention is without merit. If Joyce, through Janes, was
acting for the company, as we have already found that he
was, a payment to him was in effect a payment to the com-
pany. He was authorized by his contract to collect this por-
tion of the selling price. The other item is that of the dam-
ages which the respondent claims to have sustained by rea-
son of fitting up a place of business and preparing to sell
the tires when they should arrive. For this purpose he rented
a storeroom, fitted it with fixtures, caused circulars and ad-
vertising matter to be printed, bought envelopes and had
them addressed. He testifies that the fixtures cost him some-
thing like $60, and the advertising matter and envelopes,
$150 or $200. In summing it up, he says:

"In hiring help and fixing up the place and directing the
envelopes I must have spent over five hundred dollars, or in
that neighborhood. I cannot give it definitely."

This evidence was not sufficient to sustain a judgment for
damages for the items there covered. There is no evidence
that the outlay made for the various purposes was the rea-

sonable value of such articles. There is no evidence of the value of the fixtures aside from their use in the particular building in which they were located. In addition to this, the respondent testifies in a general way that he must have spent over five hundred dollars, or in that neighborhood, but could not give it definitely. In the judgment is included five hundred dollars for damages incidental to the opening of the place of business. This was error.

The cause will be remanded with direction to the superior court to enter a judgment in favor of the respondent in the sum of $3,334.56. The appellant will recover costs in this court.

ELLIS, C. J., FULLERTON, MORRIS, and CHADWICK, JJ., concur.